**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| **DANIEL MARTINS, individually and on behalf of others similarly situated,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**FLOWERS FOODS, INC., FLOWERS BAKING CO. OF BRADENTON, LLC, FLOWERS BAKING CO. OF VILLA RICA, LLC, FLOWERS BAKING CO. OF MIAMI, LLC, FLOWERS BAKING CO. OF JACKSONVILLE, LLC, and FLOWERS BAKING CO. OF THOMASVILLE, LLC,**<br><br>    **Defendants.** | Case No.:  8:16-cv-03145-MSS-JSS |

**AMENDED COLLECTIVE ACTION COMPLAINT FOR DAMAGES &
DEMAND FOR JURY TRIAL**

Plaintiff, DANIEL MARTIN, individually and on behalf of others similarly situated, (hereinafter collectively "Plaintiff"), who were employees of Defendants, FLOWERS FOODS, INC., FLOWERS BAKING CO. OF BRADENTON, LLC, FLOWERS BAKING CO. OF VILLA RICA, LLC, FLOWERS BAKING CO. OF MIAMI, LLC, FLOWERS BAKING CO. OF JACKSONVILLE, LLC, and FLOWERS BAKING CO. OF THOMASVILLE, LLC (hereinafter collectively "Defendants" or "Flowers"), by and through the undersigned counsel brings this action for unpaid overtime compensation, declaratory relief, liquidated damages, attorneys' fees and costs and other relief under the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) (the "FLSA").

1

## NATURE OF THE ACTION

1. This lawsuit seeks to recover overtime compensation for Plaintiff and similarly situated employees whom have worked for Defendants as "**distributors**" to deliver fresh baked goods to Defendants' customers.

2. Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiff seeks to prosecute this FLSA claim as a collective action on behalf of all persons whom are currently or were formerly employed by Defendants to distribute fresh bakery products for Defendants. This action is intended to include each and every distributor who worked for the Defendants **within the states of Florida and Georgia**[1] at any time within the past three (3) years ("the class members") immediately preceding issuance of the notice and/or who opted into this case.

3. Plaintiff alleges, on behalf of himself and the class members, that they are entitled to, *inter alia*: (i) unpaid overtime wages for hours worked above forty (40) hours in a work week as required by law; (ii) liquidated damages; pursuant to the FLSA, 29 U.S.C. §§ 201, *et seq*.; and (iii) reasonable attorneys' fees and costs.

## PARTIES

4. During the relevant time period, Plaintiff, Daniel Martins ("Martins") was a resident of Sarasota County, Florida and worked as a Flowers distributor in Florida.

5. Defendant, Flowers Foods, Inc., ("Flowers Food") is a Georgia corporation with its principal place of business at 1919 Flowers Circle, Thomasville, Georgia, 31757.

6. Martins perform(ed) delivery and merchandizing services to local retailers of bakery and snack food products manufactured or sold by Flowers.

---

[1] The putative exclude any distributors who worked for Flowers Foods, Inc. through Derst Baking Company, LLC.

7. Martins operated out of a distribution center run by Flowers Baking Co. of Bradenton, LLC.

8. Martins worked for Defendants from approximately October 2011 through the present.

9. Martins regularly worked over forty (40) hours per week.

10. Martins typically worked approximately sixty (60) hours per week and did not receive overtime premium pay at any time during the relevant time period.

11. Martins' primary job duty required him to deliver products and merchandise to retailers of bakery and bread products on behalf of Defendants. Martins operated out of a warehouse operated by Defendants and performed related activities at their place of business located in Sarasota County.

12. Flowers hires individuals, whom it classifies as independent contractors, to distribute its products by delivering them to grocery stores and stocking the products on store shelves.

13. Flowers employs distributors in 31 states throughout the southern and eastern parts of the United States.

14. Flowers is a corporation which operates and conducts business in Sarasota County, Florida, and is therefore within the jurisdiction of this Court.

15. Flowers Baking Co. of Bradenton, LLC ("Flowers Bradenton") is a company which operates and conducts business within Sarasota County, Florida and is therefore within the jurisdiction of this Court.

16. Flowers Bradenton is a wholly owned subsidiary of Flowers Foods, Inc.

17. Flowers Bradenton hires individuals, whom it classifies as independent contractors, to deliver and stock bakery and snack food products from its Bradenton, Florida distribution center.

18. Flowers Baking Co. of Villa Rica, LLC. ("Flowers Villa Rica"), is a company which operates and conducts business within Thomas County, Georgia.

19. Flowers Villa Rica is a wholly owned subsidiary of Flowers Foods, Inc.

20. Because Flowers Foods, Inc. operates and conducts business within Sarasota County, Florida, its subsidiary, Flowers Villa Rica, is therefore within the jurisdiction of this Court.

21. Flowers Vila Rica hires individuals, whom it classifies as independent contractors, to deliver and stock bakery and snack food products from its Villa Rica, Georgia distribution center.

22. Flowers Baking Co. of Miami, LLC. ("Flowers Miami"), is a company which operates and conducts business within Dade County, Florida.

23. Flowers Miami is a wholly owned subsidiary of Flowers Foods, Inc.

24. Because Flowers Foods, Inc. operates and conducts business within Sarasota County, Florida, its subsidiary, Flowers Miami, is therefore within the jurisdiction of this Court.

25. Flowers Miami hires individuals, whom it classifies as independent contractors, to deliver and stock bakery and snack food products from its Miami, Florida distribution center.

26. Flowers Baking Co. of Jacksonville, LLC. ("Flowers Jacksonville"), is a company which operates and conducts business within Duval County, Florida.

27. Flowers Villa Jacksonville is a wholly owned subsidiary of Flowers Foods, Inc.

28. Because Flowers Foods, Inc. operates and conducts business within Sarasota County, Florida, its subsidiary, Flowers Jacksonville, is therefore within the jurisdiction of this Court.

29. Flowers Jacksonville hires individuals, whom it classifies as independent contractors, to deliver and stock bakery and snack food products from its Jacksonville, Florida distribution center.

30. Flowers Baking Co. of Thomasville, LLC. ("Flowers Thomasville"), is a company which operates and conducts business within Thomas County, Georgia.

31. Flowers Thomasville is a wholly owned subsidiary of Flowers Foods, Inc.

32. Because Flowers Foods, Inc. operates and conducts business within Sarasota County, Florida, its subsidiary, Flowers Thomasville, is therefore within the jurisdiction of this Court.

33. Flowers Thomasville hires individuals, whom it classifies as independent contractors, to deliver and stock bakery and snack food products from its Thomasville, Georgia distribution center.

34. All of Flowers Foods services are provided through its wholly-owned subsidiaries.

35. These subsidiaries include:

    a.    Flowers Foods Specialty Group, LLC; (GA)

    b.    Flowers Foods, Inc.; (GA)

    c.    Flowers Baking Co. of Miami, LLC; (FL)

    d.    Flowers Baking Co. of Thomasville, LLC; (GA)

    e.    Flowers Baking Co.; (GA)

    f.    Flowers Baking Co. of Bradenton, Inc.; (FL)

    g.    Flowers Baking Co. of Florida, LLC; (FL)

    h.    Flowers Baking Co. of Villa Rica, LLC; (FL) and

    i.    Flowers Baking Co. of Jacksonville, LLC; (FL)

36. At all times relevant hereto, Flowers Foods and its aforementioned wholly-owned subsidiaries operated, and continue to operate, as one "joint enterprise," within the meaning of the FLSA.

37. At all times relevant hereto, Flowers Foods and its aforementioned wholly-owned subsidiaries operated, and continue to operate, as an "integrated enterprise," within the meaning of the FLSA.

38. At all times material hereto, Flowers Foods and its aforementioned wholly-owned subsidiaries were Plaintiff's "joint employers" within the meaning of the FLSA.

39. At all times material hereto, Flowers Foods operated all of its aforementioned subsidiaries.

40. At all times material hereto, Flowers Foods co-mingled the assets of all of its wholly-owned subsidiaries together and reported the earnings of same collectively.

41. At all times material hereto, Flowers Foods funded all of the subsidiaries from a common fund.

42. At all times material hereto, Flowers Foods jointly employed the same employees, in the same or similar role, simultaneously as one joint enterprise.

43. At all times material hereto, Flowers Foods and all of its aforementioned subsidiaries, all maintained their principle place of business at 1919 Flowers Circle, Thomasville, GA 31757.

44. At all times material hereto, Flowers Foods and all of its aforementioned subsidiaries, had common personnel in departments such as IT, accounting, human resources, and marketing.

45. At all times material hereto, Flowers Foods and all of its aforementioned subsidiaries had common senior officers and/or management.

46. At all times relevant hereto, Flowers Foods and its aforementioned subsidiaries shared one common internet domain; http://www.flowersfoods.com.

47. At all times relevant hereto, Flowers Foods and its aforementioned subsidiaries shared common corporate offices.

48. At all times relevant hereto, Flowers Foods and its aforementioned subsidiaries shared a common telephone number for their corporate offices.

49. At all times relevant hereto, Flowers Foods and its aforementioned subsidiaries shared a common mailing address for their corporate offices.

50. At all times relevant hereto, Flowers Foods and its aforementioned subsidiaries engaged in related operations.

51. At all times relevant hereto, Flowers Foods issued determined its policies under the FLSA uniformly for all of its aforementioned subsidiaries.

52. At all times relevant hereto, Flowers Foods uniformly classified all of its distributors as independent contractors for all of its aforementioned subsidiaries.

53. At all times relevant hereto, Flowers Foods decided not to pay overtime to its distributors at all of if aforementioned subsidiaries.

54. After being sued by many distributors, Flowers Foods offered current distributors at all of its subsidiaries money to sign an agreement that included an arbitration clause.[2]

55. Flowers Foods was and continues to be Plaintiff's "employer" within the meaning of FLSA.

56. Flowers Foods and its aforementioned subsidiaries continue to be Plaintiff's "joint employer" within the meaning of the FLSA.

## JURISDICTION

57. This action arises under the FLSA, 29 U.S.C. §210, *et. seq*. The Court has jurisdiction over the FLSA claim pursuant to 29 U.S.C. § 206 and 29 U.S.C. § 216(b).

## VENUE

58. The venue of this Court over this controversy is proper under 28 U.S.C §§ 1391(b)(2) and1391(c) because a substantial part of the events giving rise to the claim occurred in the Sarasota County, Florida.

## COVERAGE

59. At all material times (2013-2016), Defendants were enterprises subject to the FLSA's provision on overtime wages.

60. At all material times, Defendants were enterprises subject to and failed to comply with 29 U.S.C. §§201-209.

---

[2] As clarified by the Supreme Court, the instant claims are not arbitral under the Federal Arbitration Association, notwithstanding and agreement to arbitrate.

61. At all material times, Defendants were an enterprise engaged in commerce or in the production of goods for commerce, in that said enterprises had at least two (2) employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

62. Defendants' employees handled such goods as commercial equipment, baking products, tables, chairs, crates, which previously moved commerce on a daily basis.

63. At all material times, each Defendant had an annual gross volume of sales or business done of not less than $500,000, exclusive of excise taxes at the retail level which are separately stated.

## FACTS

64. Defendant, Flowers Foods, is a corporation whose business consists of manufacturing, selling and distributing bakery and snack food products to retail customers.

65. Flowers Foods uses a centralized network of communication, distribution, and warehousing facilities integrating Class members into that existing network of operations throughout Florida and Georgia.

66. These facilities include facilities operated by Defendants, Flowers Baking Co. Bradenton, LLC., Flowers Baking Co. of Villa Rica., Flowers Baking Co. of Miami, Flowers Baking Co. of Jacksonville, Flowers Baking Co. of Thomasville, LLC.

67. Defendant Flowers Foods, by and through its affiliates and subsidiaries, bakes and sells locally bread and bread products through local warehouses. Distributors,

such as Plaintiff and members of the Class, arrive at local warehouses and load their vehicles with Defendants' products.

68. Distributors load and then deliver the product from Defendants' local warehouses to Defendants' local retailer - - customers at the time and place specified by Defendants.

69. The distribution agreement between Defendants and distributors has no specific end date and can be terminated by either party at any time with limited notice.

70. Defendant Flowers Foods markets its bakery and snack products to grocery stores, convenience stores and other merchants. Defendant Flowers Foods negotiates directly with the retailers to set virtually all terms of the relationship including:

  a. wholesale and retail prices for products;

  b. service and delivery agreements;

  c. shelf space to display products;

  d. product selection;

  e. promotional pricing for products;

  f. the right to display promotional materials;

  g. print advertisements in retailers' newspapers; and

  h. virtually every other term of the arrangement.

71. In some cases, Flowers Foods directly negotiates and agrees with retailers and fast food restaurants to locally manufacture and distribute the local retailer's store brand (or private label) bread products.

72. Defendant Flowers Foods often negotiates the above terms for fresh baked bread and bread products (which are distributed by distributors and members of the

Class) at the same time as it negotiates terms for its shelf-stable snack products (which are not distributed by distributors). The result is that distributors' job duties and ability to earn income is tied directly to the sale and promotion of products outside of their control.

73. Plaintiff does not directly increase sales or customers, or contract directly with customers, is not compensated with bonuses for new customers or increased sales, and is not required to attend sales training or conferences.

74. The relationship between Plaintiff and each member of the Class, and Defendants are essentially the same in all material respects.

75. Distributors and members of the Class must strictly follow Defendants' instructions and adhere to the pricing, policies, and procedures negotiated between Defendants and their retailer-customers.

76. Distributors use Defendants' hand-held computer to log deliveries, and Defendants bill their customers using the data entered into the computer by the distributor. The terms of the sale are negotiated directly between Defendants and their retailer-customer.

77. Distributors place Defendants' products on the retailer-customer's shelves, remove stale or rejected product, and organize the retailer-customer's display shelf. If Defendants are running a sale or promotion, the distributor also constructs and stocks the promotional display. Defendants usually reimburse distributors for stale or rejected product.

78. Defendants represented to Plaintiff and other distributors that they would run their businesses independently, have the discretion to use their business judgment, and have the ability to manage their businesses to increase profitability.

79. Nonetheless, Defendants paid Plaintiff and continued to pay Plaintiff as an employee and issued him a W2 each year.

80. Contrary to their representations, Defendants denied Plaintiff and other distributors benefits of ownership and entrepreneurial skill by retaining and exercising the following rights:

    a.    the right to negotiate the wholesale price for the purchase and sale of products;

    b.    the right to negotiate shelf space in the stores in the distributor's territory;

    c.    the right to negotiate the retail sale price for products;

    d.    the right to establish all sales and promotions and to require distributors to follow them;

    e.    the right to change orders placed by distributors, to require them to pay for product they did not order, load it on their trucks, deliver it to stores, maintain the product in the store, remove the product from the store, and return it to the warehouse for credit; distributors who did not attempt to distribute the extra product were billed for the full wholesale price of that product;

    f.    the right to assign delivery stops to each distributor in a particular order and require distributors to get approval for following a different order;

    g.    the right to discipline distributors, up to and including termination, for reasons including hiring employees to run their routes, taking time off work, or refusing a specific order to deliver a product to a particular store at a particular time;

      h.    the right to handle customer complaints against the distributor and to take disciplinary action;

      i.    the right to withhold pay for certain specified expenses;

      j.    the right to unilaterally terminate the employment relationship;

      k.    the right to unilaterally vary the standards, guidelines, and operating procedures; and

      l.    various other rights reserved by Defendants.

81. Plaintiff and Class members were, or are, required to accept Defendants' conditions of employment or face termination.

82. Defendants not only retained the rights listed above, but they exercised the rights as well.

83. In another example, Defendants routinely modify a distributor's product orders to increase the amount of the order. If a distributor refuses the additional product, Defendants bill the distributor for the product and deduct the cost from the distributor's wages.

84. Defendants require the distributors to process all transactions through a hand held computer they provide to them. The hand held computer controls the product prices, maintains customer information, tracks mileage, and monitors business performance.

85. Defendants control the Plaintiff's and members of the Class' opportunities for profit or loss both by controlling wholesale pricing and negotiating retail pricing. Specifically, Defendants negotiate the sale of its products with major retailers. Plaintiff and members of the Class then deliver the products to store locations per the agreement between Defendants and the retailer. Plaintiff lacks discretion as to what products to

distribute to a particular store, whether to run sales or promotions, how frequently to service stores, and similar discretion that would allow them to increase (or decrease) the profitability of their work.

86. Distributors' investment in equipment to operate their route is relatively low. Many distributors use their personal vehicles and a trailer to transport Flowers products to retailers. Apart from the purchase of a small trailer, there is no other investment necessary because Defendants provide computer equipment, administrative support, warehouse space, advertisements, promotional materials, bakery trays, market advice, strategic development, and virtually every other business necessity. Defendants even arrange for insurance and vehicle financing on behalf of distributors; distributors pay for the insurance through wage deductions.

87. The distribution job performed by Plaintiff and members of the proposed classes does not require specialized skills.

88. Since they were misclassified as non-employees, Plaintiff and Class members were denied the rights and benefits of employment, including, but not limited to, overtime premium wages.

89. Plaintiff and Class members have incurred expenses for equipment, insurance, product loss, product return, and other expenses that Defendants have required them to purchase or pay, or that are necessary for their work.

90. Distributors typically work more than forty (40) hours during a seven-day workweek.

91. However, distributors do not receive overtime premium wages.

## COLLECTIVE/CLASS ALLEGATIONS

92. Plaintiff and Class members performed the same or similar job duties as one another for Defendants as distributors.

93. Plaintiff and the Class members were paid in a similar manner based on Defendants' uniform distributorship agreement.

94. Plaintiff and the Class members worked similar hours and routinely worked in excess of forty (40) hours per week.

95. Further, Plaintiff and the Class members were subjected to the same pay provisions in that they were not compensated at time and one-half their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek.

96. Defendants determined that Plaintiff and the Class members are not entitled to overtime based on the same exemptions.

97. This policy or practice was applicable to Plaintiff and the Class members.

98. Application of this policy or practice does not depend on the personal circumstances of Plaintiff or those joining this lawsuit, rather the same policies or practices which resulted in the non-payment of overtime to Plaintiff also apply to all Class members.

99. Accordingly, the Class members are properly defined as:

> **All distributors whom worked for Defendants, within the states of Florida and Georgia within the last three (3) years prior to the date they filed a consent to join and whom were not compensated at time and one-half their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek.**

100. The precise size and identity of the Class members should be ascertainable from the business records of Defendants.

101. The exact number of members of the Class can be determined by reviewing Defendants' records. Plaintiff, under information and belief, is informed there are numerous of eligible individuals in the defined class.

102. The claims under the FLSA may be pursued by others who opt-in to this case pursuant to 29 U.S.C. § 216(b).

103. A collective action suit, such as the underlying, is superior to other available means for fair and efficient adjudication of the lawsuit. The damages suffered by individual members of the class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for Class members to individually seek redress for the wrongs done to them.

**COUNT I - RECOVERY OF OVERTIME
COMPENSATION AGAINST DEFENDANTS**

104. Plaintiff reincorporates and readopts all allegations contained within Paragraphs 1-103 above.

105. Plaintiff, and those similarly situated to him, are/were entitled to be paid time and one-half their regular rate of pay for each hour worked in excess of forty (40) per work week. During their employment with Defendants, Plaintiff, and those similarly situated to him, regularly worked overtime hours but was/were not paid time and one half compensation for same.

106. As a result of Defendants' intentional, willful, and unlawful acts in refusing to pay Plaintiff, and those similarly situated to him, time and one half their regular rate of pay for each hour worked in excess of forty (40) per work week in one or more work

weeks, Plaintiff, and those similarly situated to him, has/have suffered damages plus incurring reasonable attorneys' fees and costs.

107. As a result of Defendants' willful violation of the FLSA, Plaintiff, and those similarly situated to him, is/are entitle to liquidated damages.

**WHEREFORE**, Plaintiff, and all other similarly situated employees, demand judgment against Defendants for:

a. Designation of this action as a collective action under the terms of 29 U.S.C. §216(b) to all similarly situated members of the FLSA Opt-in Class, apprising them of the pendency of this action and permitting them to assert their FLSA claims in this action through individual consent;

b. The payment of all overtime hours at one and one-half the regular rate of pay for the hours worked by them for which Defendants did not properly compensate him/them;

c. Liquidated damages;

d. Reasonable attorneys' fees and costs incurred in this action;

e. A declaration that Plaintiff and the Opt-in Plaintiffs were employees of Defendants under the terms of the FLSA and not independent contractors.

f. Pre- and post-judgment interest as provided by law;

g. Trial by jury on all issues so triable;

h. Any further relief that this Court determines to be just are appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury of all issues so triable.

Dated this 16th day of September, 2019.

        Respectfully submitted,

        /s/ *Andrew R. Frisch*
        **Andrew. R. Frisch**
        Florida Bar No. 27777
        **MORGAN & MORGAN, P.A.**
        8151 Peters Road, Suite 4000
        Plantation, FL 33324
        Telephone: (954) WORKERS
        Facsimile:  (954) 333-3515
        E-mail: AFrisch@forthepeople.com

        *Attorneys for Plaintiff*