## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**DANIEL MARTINS, individually and on behalf of others similarly situated,**

        **Plaintiff,**

                                      **Case No. 8:16-cv-3145-MSS-JSS**

**v.**

**FLOWERS FOODS, INC., FLOWERS BAKING CO OF BRADENTON, LLC, FLOWERS BAKING CO. OF VILLA RICA, LLC, FLOWERS BAKING CO. OF MIAMI, LLC, FLOWERS BAKING CO. OF JACKSONVILLE, LLC, and FLOWERS BAKING CO. OF THOMASVILLE, LLC,**

        **Defendants.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

**THIS CAUSE** comes before the undersigned on Dkts. 199, 209, 213, 215, and 222 (collectively herein, "Motions") pursuant to the Court's Order entered on May 29, 2020, referring the Motions to the Special Master.  Following the entry of the Order, the parties appeared before the Special Master for a telephonic status conference to discuss the pending Motions.  During the status conference, the parties agreed that, based on certain developments occurring after the entry of the May 29th Order, Dkts. 209 and 213 no longer remained at issue.[1]

---

[1]More specifically, on June 5, 2020, the Court issued a Third Amended Case Management and Scheduling Order (Dkt. 256) and Endorsed Order denying as moot the parties' Second Joint Motion to Extend the Discovery Deadlines and All Subsequent Deadlines (Dkt. 255).  With respect to Defendants' Motion for Expedited Pretrial Conference (Dkt. 209), the parties agreed their representations pleaded in their Joint Motion to Consolidate Pending Discovery Motions for Hearing Scheduled on February 26,

On July 23, 2020, and pursuant to notice, the Special Master held a telephonic motion hearing on Defendants' Motion for Court-Supervised Discovery (Dkt. 199), Plaintiff's response in opposition thereto (Dkt. 212), and Defendants' reply in support of their Motion (Dkt. 218); Plaintiff's Motion for Clarification Regarding the Case Management and Scheduling Order [D.E. 187 and D.E. 162] and/or in the Alternative, Motion for Representative Discovery (herein, "Motion for Clarification," Dkt. 215) and Defendants' response in opposition thereto (Dkt. 220); and Defendants' Motion to Compel Discovery (herein, "Motion to Compel," Dkt. 222) along with Plaintiff's response in opposition thereto (Dkt. 230). Having heard the parties' respective arguments and upon consideration of the relevant filings, case law, and being otherwise fully advised, the undersigned **RECOMMENDS** that: (1) Plaintiff's Motion for Clarification be **GRANTED IN PART AND DENIED IN PART**; (2) Defendants' Motion to Compel be **GRANTED IN PART AND DENIED IN PART**; and (3) Defendants' Motion for Court Supervised Discovery be **GRANTED IN PART AND DENIED IN PART**.

## I.    RELEVANT BACKGROUND

Plaintiff, Daniel Martins, initiated this action on November 8, 2016, under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, alleging that he and other similarly situated individuals who worked as distributors delivering bakery and bread products

---

2020 (Dkt. 233) that "consolidating the February 26, 2020 hearing . . . would render moot Defendants' Motion for Expedited Pretrial Conference, which was filed specifically to seek expedited consideration of the ongoing discovery disputes and clarification from the Court as to the allowable scope of discovery. . ." remained true and that the undersigned's hearing and resolution of Dkts. 199, 215, and 222 would otherwise resolve the relief sought in Dkt. 209.

and merchandise to Defendants' customers were misclassified as independent contractors. (Dkt. 1). Plaintiff further alleges that Defendants regularly required him and other distributors to work more than 40 hours each work week but did not compensate him in accordance with the FLSA. (Dkt. 1).  On September 16, 2019, Plaintiff filed an Amended Collective Action Complaint for Damages & Demand for Jury Trial (herein, "Amended Complaint"). (Dkt.198).   Therein, Plaintiff seeks to recover, on his behalf and on behalf of distributors who worked for Defendants in Florida and Georgia, unpaid overtime compensation, declaratory relief, liquidated damages, attorneys' fees and costs and other relief. (Dkt. 198).   Defendants responded the Amended Complaint on September 30, 2019, denying Plaintiff's claims and raising several defenses (Dkts. 200-205).

The Court conditionally certified the matter as a collective action on March 28, 2018. (Dkt. 135).  By Orders dated April 17, 2018 and October 22, 2018, the Court approved notice to be sent to potential opt-in Plaintiffs (Dkt. 139).   The Court-authorized notice informed opt-in Plaintiffs that, among other things, "[i]f you complete a Consent to Join form and join the case . . . you will become part of the "Collective."" (Dkt. 138-1 at p. 3).  It further informed them that, "[w]hile these lawsuits are pending, you may be asked to provide discovery or relevant information regarding the work you performed at Flowers." (Dkt. 138-1 at p. 3). Since that time, the parties agree that nearly 300 individuals have opted-in at some point in the litigation (although some have since withdrawn or been dismissed). (*See e.g.*, Dkts. 199, 240).   Post-certification, the Court also issued several Case Management and Scheduling Orders

(herein, "CMSOs") that, among other things, outlined the discovery schedule (which has been extended with each of the amended CMSOs) and outlined the limits and scope of discovery in the matter. (Dkts. 162, 187, 256).

In the CMSOs, the Court granted Defendants permission to depose named Plaintiff and 20% of the opt-in Plaintiffs and Plaintiff permission to take 20 depositions in total. (Dkts. 162, 187, 256).  Additionally, the parties were permitted to serve up to 30 interrogatories, 30 documents requests, and 30 requests for admissions *per side*. (Dkts. 162, 187, 256).  On or about May 23, 2019, Defendants propounded upon 299 distributors, through Plaintiff's counsel, Defendants' Omnibus Interrogatories to the Named Plaintiff and Each Opt-In Plaintiff (herein, "Omnibus Interrogatories") and Defendants' Omnibus Requests for Production of Documents to the Named Plaintiff and Each Opt-in Plaintiff (herein, "Omnibus Production Requests"). (Dkts. 215-1, 215-2).  On or about June 24, 2019, Plaintiffs issued their omnibus objections to Defendants' Omnibus Interrogatories and Omnibus Production Requests. (Dkt. 220-1). The same day, Plaintiff also served his First Request for Production of Documents (herein, "Plaintiff's RFPs") and First Set of Interrogatories to Defendants (herein, "Plaintiff's Interrogatories")(Dkt. 220-3, 220-4).

Defendants also conducted 21 depositions and sought to take several additional depositions.  (Dkt. 222 at p. 9).  While the discovery described above was pending, various disputes arose between the parties resulting in Defendants filing their Motion for Court-Supervised Discovery on September 26, 2019; Plaintiff filing his Motion for Clarification on October 25, 2019; and Defendants filing their Motion to

Compel Discovery on December 10, 2019.   The matters raised in each of these motions are now before the undersigned.

## II.   APPLICABLE LEGAL STANDARDS

Rule 26 (b)(1) of Federal Rules of Civil Procedure generally defines the proper scope of discovery in all cases, including FLSA collective actions where there is a question regarding whether individualized or representative discovery should be permitted. *See* Fed. R. Civ. P. 26(b)(1); *see also Rindfleisch v. Gentiva Health Services, Inc.*, No. 1:10-cv-3288-SCJ, 2011 WL 7662026, *2, 4 (N.D. Ga. Dec. 29, 2011).   It provides that,

> [u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).   And, although Rules 33, 34, and 36, establish certain guideposts for the issuance of written discovery, those Rules remain subject to stipulations or court orders limiting or expanding such discovery.   *See* Fed. R. Civ. P. 26, 33, 34, 36. In fact, Rule 26(b) gives the Court broad discretion to limit the frequency or extent of discovery particularly when such discovery may be duplicative, more readily obtained from another source, or when the burden or expense outweighs the benefits of the discovery.   *See* Fed R. Civ. P. 26(b)(2)(C).

In the context of a FLSA collective action, district courts apply a two-step process to decide whether the action should be certified: (1) the notice stage; and (2)

the decertification stage.  *See Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1260 (11th Cir. 2008).  The standard for determining similarity at the notice stage is not "particularly stringent, fairly lenient, flexi[ble], [and] not heavy.  *Id.* at 1261.  However, at the decertification phase, which is triggered by a motion for decertification, the standard is less lenient, requires a plaintiff to carry a heavier burden, and is supported by "a much thicker record than [what is available] at the notice stage."  *Id.*  As is the case here, the question of what amount and breadth of discovery should be allowed post-conditional certification, but pre-decertification often arises.  And there is no bright-line rule or even Eleventh Circuit precedent that dictates a certain outcome on that question in FLSA collective actions.  *See Sullivan v. PJ United, Inc.*, No. 7:13-cv-01275-LSC, 2017 WL 10575860, *4 (N.D. Ala. Oct. 16, 2017).  Yet, as noted by district courts and as reflected in the cases cited by the parties, there are a number of non-binding decisions concerning the proper scope of discovery and otherwise addressing this issue.  *See id.*; s*ee also Strauch v. Computer Sciences Corp.*, No. 3:14-cv-956, 2015 WL 540911, *2 (D. Conn. Feb. 10, 2015).

In certain cases, either the parties have stipulated, or the courts have determined, that representative discovery is sufficient. *See e.g., Devries v. Morgan Stanley & Co., LLC,* No. 12-81223-CIV, 2015 WL 6670109 (S.D. Fla. Oct. 30, 2015). In other cases, courts have allowed individualized discovery from each opt-in plaintiff. *See Morgan*, 551 F.3d at 1244-45 (observing that, in the context of ongoing discovery disputes regarding the appropriate scope of discovery, the district court limited the number of depositions of opt-in plaintiffs but permitted written discovery on all

approximately 2,100 opt-in plaintiffs); *see also Daniel v. Quail Intern, Inc.*, No. 3:07-cv-53(CDL), 2010 WL 55941, *1 (M.D. Ga. Jan. 5, 2010)(granting individualized discovery in a class of 39 members where plaintiffs were all on notice that if they opted in they "may be required to participate in depositions, provide written responses, and/or testify in Court in support of [their] claims" and defendant asserted an intent to move to decertify the class and sought discovery on the issue of whether the opt-in plaintiffs are similarly situated); *Hernandez v. Starbucks Coffee Co.*, No. 09-60073, 2011 WL 2729076, * (S.D. Fla. June 22, 2011)(permitting defendants to take written discovery of three limited interrogatories and four requests for documents from 732 opt-in plaintiffs); *Henderson v. Holiday CVS, LLC*, No. 09-80909, 2010 WL 11505170, *1-2 (S.D. Fla. Nov. 15, 2010).  Other courts have found that individualized discovery of a sampling of the opt-plaintiffs is appropriate, finding that more discovery would be "unduly burdensome, unnecessary, and likely to undermine efficiency of interests." *See e.g., Perrin v. Papa John's Int'l Inc.*, No. 4:09-cv-01335-AGF, 2014 WL 4749547, at *4-5 (E.D. Mo. Sept. 24, 2014)(disallowing individualized discovery of all nearly 4,000 opt-in plaintiffs but allowing individualized discovery of 20% of them).  The cases illustrate that the determination concerning the permissible scope of discovery is fact-specific.

In instances where a party believes that another party has failed to make certain disclosures or cooperate in discovery, that party may move for an order compelling disclosure or discovery that complies with Local Rule 3.04.  Fed. R. Civ. P. 37; Local Rule 3.04.  Sanctions for such failure to respond can be imposed where,

after being served with proper notice to appear for a deposition, a party fails to appear or, after being properly served with written discovery, a party fails to serve its answers, objections, or written response.  Fed. R. Civ. P. 37(d)(1)(A).  A failure described in Federal Rule of Civil Procedure 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has pending motion for protective order under Rule 26(c).  *Id.*  Further, if a motion seeking to compel outstanding discovery is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, to pay reasonable expenses including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A).

## III.   DISCUSSION

### A.   Plaintiff's Motion for Clarification (Dkt. 215)

The cornerstone of the pending discovery disputes between the parties is the language that has appeared in each of the Court's post-conditional certification CMSOs imposing certain limitations on written discovery (Dkts.162, 187, and 256).[2] In Section (I)(C)(2)-(4) of each of the CMSOs, the Court specifically ordered that,

2.    absent leave . . ., each side (not party) may serve up to **thirty (30) interrogatories**, including sub-parts.
3.    absent leave . . ., each side (not party) may serve up to **thirty (30) interrogatories**, including sub-parts.
4.    absent leave . . ., each side (not party) may serve up to **thirty (30) interrogatories**, including sub-parts.

---

[2]Although Plaintiff's Motion for Clarification was filed prior to the Court's Third Amended Case Management and Scheduling Order (herein, "Third CMSO"), it raises issues that apply to all CMSOs given that the language is the same in each of them.

*See* Dkts. 162, 187, and 256. The parties disagree regarding whether this language allows Defendants to serve discovery on all opt-in Plaintiffs or whether it limits each side to serving no more than a total of 90 written discovery requests. (*See* Dkts. 215, 220). In his Motion for Clarification, Plaintiff argues that the Court clearly "intended each side to collectively serve up to 30 interrogatories, 30 documents, and 30 requests for admission on the opposing side (and not each party)." (Dkt. 215 at p. 3). Thus, according to Plaintiff, by serving 18 Omnibus Interrogatories and 26 Omnibus Production Requests (or a total of 13,156 written discovery requests) on each of the independent distributors who have opted into the collective action without first seeking leave, Defendants have exceeded the Court-imposed discovery limitations. (Dkt. 215 at p. 2).[3] Plaintiff further pleads that responding to individualized discovery is overly burdensome and inconsistent with the collective action mechanism. (Dkt. 215 at p. 6-9). Plaintiff seeks an order adopting its interpretation of the Court's CMSOs or alternatively, an order limiting Defendants to written discovery of 20% of the opt-in Plaintiffs, the same percentage allowed for depositions.[4]

---

[3]Plaintiff also asserts that the challenged written discovery requests are "lengthy, complex, . . . are chock-full with legalese, . . . contain multiple parts, and [contain] complicated language rife with legal traps." (Dkt. 215 at p. 2,9). Because there is no pleading before the undersigned identifying specific written discovery requests Plaintiff takes issue with and seeking any specific relief from the Special Master as to those items, the undersigned will not address that issue.

[4]At the July 23rd motion hearing, Plaintiff also argued that this same type of request was denied in another court concerning one or more of Defendants in this case. However, Plaintiff did not identify any specific case. Presumably, Plaintiff was referring to a recent order issued in *Ludlow v. Flowers Food, Inc.*, Case No. 18-cv-1190-JLS-JLB (S.D. Cal. Jul. 6, 2020) granting in part plaintiff's motion for protective order. Therein, the court found that "a 115-member opt-in class is not so large that the burden of responding to some individualized written discovery propounded on each opt-in plaintiff would be unmanageable or unreasonable[;] however, requiring each opt-in plaintiff to respond to 17 RFPs and 8 interrogatories would impose significant burden on the Plaintiffs . . ." *Ludlow v. Flowers Food, Inc.*, Case No. 18-cv-1190-JLS-JLB, No. 2020 WL 3791638, *13 (S.D. Cal. Jul. 6, 2020). In any case,

Defendants responds that: (1) Plaintiff's argument is untimely as it comes five months after the discovery was served and therefore, should be deemed waived; (2) fact intensive inquiries that will be relevant at the decertification phase warrant greater than representative discovery; and (3) Plaintiff understood the scope of the discovery to be individualized given that Plaintiff sought discovery both as to named Plaintiff and opt-in Plaintiffs.  (Dkts. 220 at p. 1-2, 5-6, 12; 220-3, 220-4).

Regarding the second argument, Defendants assert that anything short of individualized discovery would deny Defendants due process.   Specifically, Defendants state that such discovery is needed to compile the facts necessary for their anticipated decertification motion so that it can obtain "at least basis information from each of the opt-in Plaintiffs as to the number of hours they are claiming to have worked, the vehicles they used servicing their distributorship, individuals who may have helped them service their distributorships, purchase and sale distributorship rights, tax records, and other information addressed by Defendants' written discovery." (Dkt. 220 at p. 6).  Based on the foregoing, Defendants request that any order issued clarify that the CMSOs "allows for Defendants to collectively serve one set of written discovery on each of the opt-in Plaintiffs individually" and deny Plaintiff's request for representative discovery.  (Dkt. 220).

---

this order is not binding precedent and, to the extent that Plaintiff asserts this order *requires* a similar outcome, that assertion is rejected.

### 1.  The Court's CMSOs Do Not Dictate Representative Discovery

There is clearly no dispute between the parties that with respect to written discovery *served* each side is limited to the 30-30-30 parameters described above. What is not clear as Plaintiff suggests is whether, in imposing said limitations, the Court intended to also limit the number of *respondents* to such written discovery. The Court may have found it unnecessary to impose such limitation given that, in the parties' February 19, 2019 Joint Status Report, specifically in the section containing their joint proposal for depositions, it contains a clarification from Defendants that their "agreement to limit depositions to 20% of opt-in plaintiffs . . . is conditional upon Defendant[sic] being *able to obtain individual responses to written discovery from each opt-in plaintiff*." (Dkt. 161)(emphasis added).  Moreover, in the same report, the parties sought to be entitled to serve requests to admit, document requests, and interrogatories on *each opposing party*. (Dkt. 161)(emphasis added). Notably, there is nothing in the report reflecting a disagreement between the parties as to whether representative or individualized discovery is appropriate.  While the undersigned is not suggesting to the Court what it intended by the disputed language in its CMSOs or the decision to increase the interrogatories allowed to 25, the undersigned finds that the plain language of the CMSOs does not support Plaintiff's position.  Applying the CMSOs as written, the undersigned does not find that Defendants exceeded the Court-imposed 30-30-30 limitation by serving one, combined set of 18 interrogatories and 26 production requests.

The undersigned finds persuasive Defendants' argument that Plaintiff understood there to be an agreement as to the scope of discovery given that Plaintiff also sought discovery from Defendants pertaining to named Plaintiff and opt-in Plaintiffs.  The undersigned also finds persuasive Defendants' argument that Plaintiff's arguments here are untimely and Plaintiff offers no explanation for his decision to wait five months to bring this issue before the Court.  This is true even though Plaintiff was well-aware as of May 23, 2019, Defendants were seeking discovery from named Plaintiff and all opt-ins and Plaintiff was reminded of that fact in each of the four deficiency letters Defendants issued on August 8, August 9, August 28, and September 6, 2019.   Instead, Plaintiff suggests that by "voluntarily serv[ing] Defendants with responses to interrogatories on behalf of 28 opt-ins, and . . . provid[ing] formal responses to Defendants' requests for production from 26 opt-ins," he met his discovery obligations. (Dkt. 230 at p. 7). This is simply incorrect.  If Plaintiff believed that Defendants had exceeded the permissible scope of discovery, Plaintiff could have, and should have, asserted said objections in response to the written discovery, which he did not do; promptly sought a protective order from the court, which he did not do; or filed the instant motion soon after receiving the discovery instead of waiting until Defendants filed their Motion for Court-Supervised Discovery. Plaintiff has not demonstrated that he acted in good faith or otherwise provided any good cause for his failure to act accordingly.

Based on the foregoing, the undersigned recommends that the Court deny Plaintiff's Motion for Clarification to the extent it seeks an Order determining that the

parties are limited to 90 total written discovery requests and that Defendants exceeded the permissible scope of discovery as set forth in the CMSOs.  Having said all of the above, however, the undersigned has the obligation to determine whether the discovery at issue is appropriate under Rule 26(a).

## 2.  Defendants Should be Allowed Individualized Discovery

As explained above, the question of whether representative or individualized discovery depends on the relative circumstances of the case.  Here, Plaintiff contends that representative discovery of no more than 20% of the opt-in Plaintiffs is sufficient.  To support that argument, Plaintiff offers no fact-specific reason; instead, Plaintiff posits that representative discovery is consistent with the notion of "pooling of resources" and "efficient resolution" of collective actions as described in *Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989).  (See Dkt. 215).  The undersigned agrees with Plaintiff that representative discovery is consistent with the FLSA collective action mechanism.  However, that alone does not render individualized discovery inappropriate. Moreover, Plaintiff cannot have it both ways.  Plaintiff cannot maintain that Defendants are limited to representative discovery while commanding of Defendants individualized discovery with respect to the named Plaintiff and opt-in Plaintiffs.  (*See i.e.,* Dkts. 220-4, 220-5)

Defendants contend that representative discovery in this case is impracticable and violative of their due process rights, which render it inappropriate.  While Defendants are correct that due process requires an opportunity for parties to present every available defense (and obtain evidence related to the same), it does not

necessarily follow that individualized discovery is required for all opt-in Plaintiffs.  *See Kutzback v. LMS Intellibound, LLC*, No. 2:13-cv-02767-JTF, 2020 WL 1317345, *5-6 (W.D. Tenn. Mar. 17, 2020). Instead, the inquiry should center on the size of the action and whether the discovery is related to the question of whether the individual plaintiffs are similarly situated within the meaning of the FLSA. *See Daniel*, No. 3:07-cv-53(CDL), 2010 WL 55941, *1 (M.D. Ga. Jan. 5, 2010).  The inquiry should also contemplate Rule 26 considerations—that is, relevance to named Plaintiff's and opt-in Plaintiffs' clams in the case or Defendants' defenses; proportionality to the needs of the case, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit of it.  Fed. R. Civ. P. 26(b)(1).

The undersigned finds that Defendants have demonstrated that individualized discovery of all opt-in Plaintiffs is appropriate to obtain information responsive to whether the opt-in Plaintiffs are in fact similarly situated.  Defendants pleaded and represented at the telephonic motion hearing that in the little discovery they have been able to take/receive, there already exists some variances between the discovery. (*See* Dkt. 222 at p. 12-13).  Examples of that include variances as to the hours opt-in Plaintiffs worked; pay provided to other employees to assist distributors with running their territory or whether they operate it alone; and reporting made on tax-related documents. (*See* Dkt. 222 at p. 12-13).  Discovery from all opt-in Plaintiffs on these matters as well as the vehicles they used servicing their distributorship, individuals

involved in their distributorships, and purchase and sale of distributorship all go to the similarly-situated question. This is particularly true considering Plaintiff's claim and Defendants' defenses pleaded in the parties' respective pleadings. (*See* Dkts. 198, 200-205).

Moreover, as evidenced by these same pleadings the information sought is germane to the misclassification question. Further, the opt-in Plaintiffs are more likely to be in possession of the information than Defendants particularly as it relates to their individual distributorship and various matters related to the same. However, the undersigned has reviewed Defendants' written discovery requests and find that certain written requests are not narrowly tailored to those questions, namely Omnibus Interrogatories 2, 3, 4, 6, 9, 12, 17, and Omnibus Production Requests 1, 2, 4, 6, 7, 14, 15, 16.[5] Accordingly, while the undersigned recommends that individualized discovery be permitted, the undersigned believes that opt-in Plaintiffs shall only be required to respond to the remaining written discovery not identified above. This modification will also serve to address the proportionality question and Plaintiff's concern regarding the purported undue burden the discovery as written imposed. Additionally, Defendants' counsel represented at the telephonic hearing that the size of the putative collective has shrunk to approximately "196," which renders the discovery more manageable and in line with other cases where individualized

---

[5]In so finding, the undersigned is directly addressing discovery to opt-in Plaintiffs not named Plaintiff. Also, the undersigned recognizes that in traditional cases some of the identified requests/interrogatories would be appropriate and within the proper scope of discovery. However, here, the undersigned is only addressing individualized discovery to the opt-in Plaintiffs.

discovery was allowed. *See Daniel*, No. 3:07-cv-53(CDL), 2010 WL 55941, *1 (M.D. Ga. Jan. 5, 2010)(collecting cases).

### B.    Defendants' Motion to Compel Discovery (Dkt. 222)

Having resolved the question of the scope of the disputed discovery limitation, the undersigned now turns to Defendants' Motion to Compel Discovery.  In the motion, Defendants move the Court for Order requiring opt-in Plaintiffs to (1) provide more complete discovery responses; (2) provide complete and accurate responses in cases where no response was provided at all; (3) to appear for previously noticed depositions or cooperate in the scheduling of their depositions; (4) to amend discovery responses that are inconsistent with their deposition testimony; and (5) to pay for the costs and attorneys' fees associated with the motion. (Dkt. 222).  Plaintiff opposes Defendants' motion on the grounds that it is (1) duplicative of Defendants' Motion for Supervised Discovery; (2) premature due to Plaintiff's pending Motion for Clarification; (3) seeks discovery that is impermissible; and (4) demands amendments from opt-in Plaintiffs although such amendments are not required under the applicable rules of procedure.  (Dkt. 230).

As a preliminary matter, many of the parties' arguments raised as a part of or in response to the Motion to Compel are duplicative of those raised in response to the Motion for Clarification.  Therefore, the undersigned does not address them again here. Also, the undersigned quickly disposes of Defendants' argument that opt-in Plaintiffs should be compelled to amend their discovery responses.  As Plaintiff correctly points out, Rule 26(e)(A) only requires supplements or corrections in

Case 8:16-cv-03145-MSS-JSS   Document 263   Filed 08/01/20   Page 17 of 24 PageID 5064

instances where a party learns that the disclosure or response is incomplete or incorrect **and** if the additional or corrective information has not otherwise been made known to the other parties during the discovery process.  Fed. R. Civ. P. 26(e)(A). Defendants by their own admissions are aware of the alleged discrepancy between the identified opt-in Plaintiffs' interrogatories and deposition testimony.  Therefore, the undersigned recommends that Defendants' request for an order compelling certain opt-in Plaintiffs to amend their interrogatories be denied. Similarly, to the extent that Defendants have failed to comply with Local Rule 3.04, the undersigned recommends that Defendants' Motion to Compel be denied without prejudice subject to Defendants refiling a motion to compel that conforms with the applicable rules.  Local Rule 3.04 requires that,

> [a] motion to compel discovery pursuant to Rule 36 or Rule 37, Fed.R.Civ.P., shall include quotation in full of each interrogatory, question on deposition, request for admission, or request for production to which the motion is addressed; each of which shall be followed immediately by quotation in full of the objection and grounds therefor as stated by the opposing party; or the answer or response which is asserted to be insufficient, immediately followed by a statement of the reason the motion should be granted.

Local Rule 3.04.  In bullet point 4 of the opening of Defendants' Motion to Compel and in the affidavit of C. Garner Sandford, Jr., attached thereto, Defendants identify in summary form instances where they believe opt-in Plaintiffs' discovery responses are deficient.  (Dkts. 222 at p. 5, 222-2).  Defendants will need to layout the specific interrogatory or production request that remains outstanding in accordance with Local Rule 3.04 in order to properly assess whether grounds exist to compel the discovery Defendants seek.

17

To the extent that Defendants have established, and Plaintiff does not dispute, that certain opt-in Plaintiffs have entirely failed to respond to written discovery for months, the undersigned recommends that Defendants' Motion to Compel be granted. On page 2 of Motion to Compel, Defendants represent that 266 of the 299 opt-in Plaintiffs in the case at the time had not provided any response at all to Defendants' Omnibus Interrogatories or their Omnibus Production Requests. (Dkt. 222 at p. 2). Plaintiff does not deny this.  Again, Plaintiff erroneously suggests that by responding on behalf of 26-28 opt-ins, he met its discovery obligations. (Dkt. 230 at p. 7). Plaintiff's argument that Defendants' Motion to Compel is premature is similarly erroneous.

The fact that Plaintiff filed a Motion for Clarification did not relieve named Plaintiffs or opt-in Plaintiffs of their known discovery obligations to respond to the written discovery.  This is especially true where neither Plaintiff nor opt-in Plaintiffs sought a protective order or other relief from the court while the Motion for Clarification was pending and did not object in writing that Defendants' written discovery was outside the scope allowed by the Court.   As stated above, Plaintiff has not demonstrated that he acted in good faith or otherwise provided any good cause for his failure to act accordingly.   The undersigned is without sufficient information regarding how many and which individuals from the list set forth on page 2 of Defendants' Motion to Compel have yet to respond to the discovery as of today. Therefore, rather than adopting the list, the undersigned recommends that the Court enter an Order requiring all opt-in Plaintiffs currently in the action who have not

previously submitted their written discovery to do so within 14 days of the effective date of said Order.

With respect to Defendants' request that opt-in Plaintiffs be compelled to appear for deposition, the undersigned recommends that it be granted. Defendants have demonstrated that it has attempted on several occasions to schedule the several depositions with Plaintiff with limited to no success. (*See* Dkt. 222-2). Plaintiff offers no good reason why these individuals have failed to appear or cooperate in the scheduling of this deposition. Therefore, the individuals identified on page 4 of Defendants' Motion to Compel, to the extent that remain in the case, shall be compelled to appear for deposition within 14 days of the effective of the Order compelling their attendance or within a reasonable time thereafter agreed to between the parties. The undersigned further recommends that the Order compelling responses and attendance at deposition put opt-in Plaintiffs on notice that if they fail to complete discovery responses or appear, they may be dismissed from the action. *See Brown v. Ansafone Contact Centers, LLC*, Case No. 5:18-cv-490, 2019 WL 5595934, *3 (M.D. Fla. Oct. 30, 2019).

Finally, as to Defendants' request for fees and costs associated with the Motion to Compel, the applicable rules require that if a motion seeking to compel outstanding discovery is granted, the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, to pay reasonable expenses including attorney's fees. Fed. R. Civ. P. 37(a)(5)(A). Therefore, the undersigned recommends that Defendants be awarded such fees and costs

associated with their Motion to Compel. The undersigned further recommends that the parties be required to meet and confer regarding the amounts Defendants seek before Defendants file any pleading with the Court as to the amounts it requests to be awarded.

### C. Defendants' Motion for Court-Supervised Discovery (Dkt. 199)

The last matter before the undersigned is Defendants' request that the Court more closely supervise the remaining discovery. (Dkt. 199). The undersigned notes that many of the arguments contained within Defendants' Motion for Court-Supervised Discovery as well as Plaintiff's response and Defendants' reply thereto are repeated (and nearly written verbatim in some cases) in one or both motions addressed above. Additionally, the Court's appointment of the undersigned as Special Master specifically for the purpose of resolving pending and future discovery issues answers the plea for a more watchful eye on the discovery of this case. Consequently, the undersigned addresses here only those remaining issues not resolved by the recommendations set forth in sections A and B above.

As a consequence of the various discovery disputes described herein, Defendants request that the Court enter an Order requiring (1) counsel for opt-in Plaintiffs to transmit to the Opt-in Plaintiffs the proposed notice attached as Exhibit A to Defendants' motion; (2) opt-in Plaintiffs to produce all outstanding discovery; (3) order going forward that, absent unforeseen circumstances, opt-in Plaintiffs will be responsible for costs incurred by Defendants in cancelling depositions on short notice; (4) ordering that going forward, opt-in Plaintiffs will be responsible for any additional

costs associated with continuing any depositions due to lack of production prior to the deposition; and (5) requiring the parties to submit to the Court a written monthly report on the status of discovery and a statement as to whether a phone conference with the Court is needed to discuss any outstanding and/or ongoing discovery issues. (Dkt. 199 at p. 1-2).  Plaintiff opposes the motion in its entirety and posits that, if the Court is inclined to issue a supplemental notice concerning discovery, that it adopt the form proposed by Plaintiff.  (Dkt. 212).

At the outset, the undersigned finds that court supervision of the remaining discovery proceedings in this case is warranted.   As it stands, the parties fact discovery deadline is September 30, 2020.   (Dkt. 256).   Based on the parties' representations during the telephonic motion hearing, it does not appear much progress has been made in furtherance of completing discovery as a result of the parties' positions on the pending motions discussed herein.   Therefore, the undersigned recommends that the Court grant Defendants' Motion for Court Supervised Discovery.   The undersigned will issue a separate discovery order outlining the ongoing reporting that will be required regarding the status of discovery, the process for calling a discovery matter up for hearing, and any other matters necessary to aid the parties in completing discovery timely.

The undersigned does not find it appropriate to send a supplemental notice regarding discovery and therefore, recommends that the Court deny that aspect of Defendants' request.  As the Court noted in its October 22, 2018 Order, the Court-authorized notice "already adequately informs potential opt-in plaintiffs of their

obligation to participate in discovery and the Court finds that further detail on this obligation is unnecessary." (Dkt. 150). The undersigned agrees. Further, if the undersigned's recommendations are adopted with respect to Defendants' Motion to Compel, both Defendants' counsel and Plaintiff's counsel will be equipped with the requisite cautionary warning that failure to participate in discovery may have consequences. For that reason, the undersigned does not believe entering an Order granting the prospective relief Defendants seek at this time. If an opt-in Plaintiff fails to comply with a discovery order requiring him/her to respond or appear, fails to show for a deposition, or fails to otherwise cooperate with respect to his/her discovery obligations, Defendants have remedies available to them to rectify such failures. *See Brown*, Case No. 5:18-cv-490, 2019 WL 5595934, *3; s*ee also Sullivan*, No. 7:13-cv-01275-LSC, 2017 WL 10575860.

IV.    **CONCLUSION**

Accordingly, it is respectfully **RECOMMENDED** that:

1. Plaintiff's Motion for Clarification Regarding the Case Management and Scheduling Order [D.E. 187 and D.E. 162] and/or in the Alternative, Motion for Representative Discovery (Dkt. 215) be **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Motion is recommended to be granted only to the extent that this Report and Recommendation provides clarification on the disputed Case Management and Scheduling Order(s). Plaintiff's Motion is recommended to be denied in all other respects.

2. Within 14 days of the effective date of the Court's Order, all Opt-in Plaintiffs be required to submit written responses to Defendants' written discovery previously served except Omnibus Interrogatories 2, 3, 4, 6, 9, 12, 17, and Omnibus Production Requests 1, 2, 4, 6, 7.

3. Defendants' Motion to Compel Discovery (Dkt. 199) be **GRANTED IN PART AND DENIED IN PART**.  Defendants' Motion is recommended to be granted only to the extent that all opt-in Plaintiffs who have not previously submitted discovery responses and those selected opt-in Plaintiffs who either failed to appear for deposition or cooperate in the scheduling of said deposition, should be compelled to respond and appear.   Defendants' Motion is also recommended to be granted as to their request for reasonable attorneys' fees and costs associated with filing the Motion.  The undersigned recommends, however, that the parties be required to meet and confer prior to Defendants filing any pleading setting for the amounts sought for such fees and costs. Defendants' Motion is recommended to be denied to the extent Defendants request that opt-in Plaintiffs who have responded to written discovery to amend their purported prior inconsistent answers to interrogatories.   Defendants' Motion is further recommended to be denied but *without prejudice* as to the remaining aspects of the Motion.

4. Within 14 days of the effective date of the Court's Order, all Opt-in Plaintiffs shall be required to appear for deposition or at such reasonable time agreed to between the parties.

5.  Defendants' Motion for Court Supervised Discovery (Dkt. 199) be **GRANTED IN PART AND DENIED IN PART**.  Defendants' Motion is recommended to be denied to the extent it seeks Court (or now, Special Master) oversight over the remaining discovery disputes and seeks certain written reporting on the status of discovery.  Defendants' Motion is recommended to be denied in all other respects to the extent the relief sought is rendered moot by the rulings on the other motions addressed herein or the relief is specifically recommended to be denied herein.

**DONE** AND **ENTERED** in Tampa, Florida, this 31st day of July, 2020.

LAKISHA M. KINSEY-SALLIS
APPOINTED SPECIAL MASTER

**Copies furnished to:**
Counsel of Record
Any Unrepresented Party