UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL MARTINS, individually and on
behalf of others similarly situated,

       Plaintiff,

v.                                      Case No.: 8:16-cv-03145-MSS-JSS

FLOWERS FOODS, INC., FLOWERS BAKING
CO. OF BRADENTON, LLC, FLOWERS
BAKING CO. OF VILLA RICA, LLC, FLOWERS
BAKING CO. OF MIAMI, LLC, FLOWERS
BAKING CO. OF JACKSONVILLE, LLC, and
FLOWERS BAKING CO. OF THOMASVILLE,
LLC,

       Defendants.
_____

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION [D.E. 263]

In named Plaintiff Daniel Martins's ("Plaintiff") Objections to the Special Master's Report and Recommendation [Dkt. 263] ("Pl. Obj."), Plaintiff insinuates that Defendants[1] somehow tricked the Special Master with faulty arguments and that the Special Master fell for that deception "hook, line and sinker."[2]  (Pl. Obj., p. 1).  Contrary to Plaintiff's assertion, the Special Master held a thorough hearing on July 23, 2020 lasting approximately two hours, during which both parties were fully and fairly heard, and the Special Master's Report and Recommendation [Dkt. 263] accurately recites the factual and procedural background of this case, particularly as it relates to construction of this Court's Case Management and Scheduling

---

[1] Flowers Foods, Inc., Flowers Baking Co. of Bradenton, LLC, Flowers Baking Co. of Vila Rica, LLC, Flowers Baking Co. of Miami, LLC, Flowers Baking Co. of Jacksonville, LLC, and Flowers Baking Co. of Thomasville, LLC are collectively referred to as "Defendants."

[2] Plaintiff and Defendants are collectively referred to as "the Parties."

Order [Dkt. 162] ("the CSMO"), Plaintiff's inexcusable discovery deficiencies and related award of costs and fees, Defendants' need for individualized discovery in this case, and Plaintiff's waiver of objections as to such individualized discovery. The Special Master correctly applied the law to the facts of this case. [3]

For these reasons, as fully set forth below, Defendants respectfully request that this Court adopt the Special Master's Report and Recommendation in its entirety.

I. <u>**PROCEDURAL POSTURE**</u>

Plaintiff filed his Complaint and Demand for Jury Trial on November 9, 2016. [Dkt. 1]. The named Plaintiff and Opt-In Plaintiffs ("Plaintiffs") are current and former independent distributors who contracted with one of five subsidiaries of Defendant Flowers Foods, Inc. (*Id.*). Plaintiffs allege they were misclassified as independent contractors and are entitled to overtime compensation under the Fair Labor Standards Act. (*Id.*). This action was conditionally certified on March 28, 2018. [Dkt. 135]. Notice was issued to the potential Opt-In Plaintiffs in late 2018, and the opt-in period closed on December 28, 2018. [Dkt. 150]. The filing deadline for Consent Forms was January 7, 2019. Originally, approximately 300 current/former distributors (hereinafter referred to as "Opt-In Plaintiffs") opted in to this case. However, approximately 100 of those distributors signed collective action waivers and were dismissed from the case in March, 2020. [Dkt. 235]. Several more distributors have voluntarily withdrawn from the case. [*See, e.g.*, Dkts. 211, 225, 227, 228, 229, 258, 261 and 266]. Currently, there is a total of

---

[3] Most of the issues raised in Plaintiff's Obj. have been addressed in some form, if not directly, in connection with Defendants' Motion for Court-Supervised Discovery [Dkt. 199], Defendants' Reply in Support of their Motion for Court-Supervised Discovery [Dkt. 218], and Defendants' Motion to Compel Discovery [Dkt. 222]. Defendants hereby incorporate those briefs into this filing as if fully stated herein.

approximately 190 Opt-In Plaintiffs in this case.  Additionally, there are six defendants in this case across Georgia and Florida.

Importantly, there is no Rule 23 class claim in this case and no representative claims. Each Opt-In Plaintiff is a party plaintiff for all purposes.  To that end, in the Order approving notice to the potential Opt-Ins that was issued on October 22, 2018 includes a statement informing the Opt-In Plaintiffs of "their obligation to participate in discovery."  [Dkt. 150, p. 5]. The Court-approved notice further confirmed that this matter is *not* a representative action and there is "no representative plaintiff" in FLSA cases like this.  [Dkt. 150, p. 7].

As the Special Master correctly noted, the "cornerstone of the pending discovery disputes between the parties" in this case as it relates to the scope of discovery centers around the CMSO. [Dkt. 263, p. 8]. Plaintiff continues to proffer the fiction that in the lead up to their filing of the Joint Amended Case Management Report [Dkt. 161] ("Joint Report"), "the Parties disagreed as to whether each party could serve discovery requests on each opposing party (i.e. whether each Plaintiff and Opt-In Plaintiff could serve written discovery on each Defendant and vice versa, or whether such discovery should be limited to one such request per side)."  (Pl. Obj., p. 8).  This is not accurate.  The competing language proposed by the Parties in the Joint Report reflects that Plaintiffs agreed that each Opt-In Plaintiff could be served with written discovery:

> **Plaintiffs' proposal: Subject to limitation set by the Court and/or agreed to by the parties, each party shall collectively be entitled to serve 25 Interrogatories on each opposing party.**

> **Defendants' proposal: Each side shall collectively be entitled to serve a maximum of 25 Interrogatories on each opposing party.  Subparts shall be considered a separate interrogatory.  To permit each opt-in party to serve 25 interrogatories would be disproportionate and unduly burdensome on Defendants.**

[Dkt. 161, p. 11].  Moreover, Defendants clarified that their concession to depose only 20% of the Plaintiffs was conditioned on obtaining individualized responses to written discovery from each opt-in.

> **Clarification from Defendants:  Defendants' agreement to limit depositions to 20% of opt-in plaintiffs on terms set forth above is conditional upon Defendants being able to obtain individual responses to written discovery from each opt-in plaintiff.**

[Dkt. 161, p. 10].

In sum, both Parties contemplated that each individual Opt-In Plaintiff would be required to respond to one set of written discovery requests.  The "dispute" between the Parties when filing the Joint Report was whether each party could serve a set of written discovery on each opposing party (thus requiring each party to potentially have to respond to multiple separate sets of written discovery).

In the CSMO itself, the Court granted Defendants permission to depose the named Plaintiff and 20% of the Opt-In Plaintiffs, as the Parties had agreed.  [Dkts. 162, 187, and 256]. Additionally, each side was permitted to serve up to 30 interrogatories, 30 documents requests, and 30 requests for production:

> **2.      Absent leave of court, each side (not party) may serve up to thirty (30) interrogatories, including sub-parts.**

> **3.      Absent leave of court, each side (not party) may serve up to thirty (30) document requests, including sub-parts.**

[Dkts. 162, 187, and 256].  Notably, there was no limit in the CSMO relieving each party from the obligation to respond to the discovery served by the opposing side.  [Dkts. 162, 187, and 256].

On May 23, 2019, Defendants propounded their Omnibus Interrogatories and Requests for Production of Documents to the named Plaintiff and each of the Opt-In Plaintiffs.  [Dkts. 215-1 and 215-2].  The Opt-In Plaintiffs issued their omnibus objections to those Interrogatories and Requests for Production on June 24, 2019, which contain no objection alleging that each Opt-In Plaintiff is not obligated to respond or any objection alleging breach of the terms of the CSMO. [Dkt. 220-1].  That same day, Plaintiffs also served their First Request for Production of Documents and First Set of Interrogatories ("Plaintiff's Discovery Requests").  [Dkts. 220-3 and 220-4].  Critically, many of Plaintiff's Discovery Requests were not limited to "representative" discovery from Defendants.  On the contrary, these Discovery Requests sought individualized information and documents from Defendants regarding *all* of the Opt-In Plaintiffs.  For example, Plaintiffs' First Request for Production of Documents defines "Plaintiffs" as "Daniel Martins and every Opt-In Plaintiff who has opted in to [this] case."  (A true and accurate copy of Plaintiffs' First Request for Production of Documents is attached as Exhibit 3 to Defendants' Response in Opposition to Plaintiffs' Motion for Clarification Regarding the Case Management and Scheduling Order [D.E. 187 and D.E 162] and/or in the Alternative, Motion for Representative Discovery. [Dkt. 220].)  Plaintiffs' Request for Production No. 2 then asks for "[a]ll daily time records, route sheets, time slips, time cards, weekly work schedules, work schedules of all other durations, and/or other records maintained by Defendants evidencing the times *Plaintiffs* arrived at work, were on break, were at lunch or departed from work."  *Id*. (emphasis added). In short, although Plaintiff claims it was unduly burdensome to ask each Opt-In Plaintiff to respond to 18 interrogatories and 26 requests for production (a total of 44 written discovery requests), Plaintiff had no problem whatsoever asking each Defendant to respond to a single written

discovery request asking for time cards, work schedules, etc. for approximately 300 different distributors. And that is just one of the requests for production. Requests Nos. 1-12, 20-21, 25-32, 36-39, and 42 all sought individualized documents related to each of the Opt-In Plaintiffs.

Plaintiffs' First Set of Interrogatories to Defendants similarly sought information specific to each of the original approximately 300 Opt-In Plaintiffs. (A true and accurate copy of Plaintiffs' First Set of Interrogatories to Defendants is attached as Exhibit 4 to Defendants Response in Opposition to Plaintiffs' Motion for Clarification Regarding the Case Management and Scheduling Order [D.E. 187 and D.E 162] and/or in the Alternative, Motion for Representative Discovery. [Dkt. 220].) Specifically, Interrogatories Nos. 1-3, 9, and 13-14 all seek individualized information as the Opt-In Plaintiffs. *Id*. In short, Plaintiffs clearly understand the importance of individualized written discovery in this case, and in fact went so far as to ask for individualized discovery from Defendants as to *all* of the Opt-In Plaintiffs. For them to now claim differently, particularly in light of their *own* written discovery requests, is simply disingenuous.

As for the depositions, Defendants have conducted 19 post-notice depositions and have sought to take several more. [Dkt. 222, p. 9]. As the Special Master correctly noted, Defendants have demonstrated that they have attempted on several occasions to schedule several depositions with limited to no success. (Dkt. 222-2; Dkt. 263, p. 19). As the Special Master further noted, at the telephonic hearing conducted on July 23, 2020, Plaintiff failed to offer any good reason why those individuals failed to appear or cooperate in the scheduling of their depositions. [Dkt. 263, p. 19].

## II.   ARGUMENT AND CITATION TO AUTHORITY

### A.   Standard of Review

Pursuant to Rule 53(f) of the Federal Rules of Civil Procedure, a Court reviews *de novo* all objections to the Special Master's findings of fact and conclusions of law.  *See* Fed. R. Civ. P. 53(f)(3)-(4); Dkt. 253.

### B.   The Special Master Correctly Interpreted the Case Management Order

In his Motion for Clarification and again in Plaintiff's Response, Plaintiff argues that the Court intended each side to collectively serve up to 30 documents, and 30 requests for admission on the opposing side (and not each party).  (Dkt. 215, p. 3; Pl. Obj., pp. 8-9).  However, as the Special Master correctly held, nothing in the CMSO dictated representative discovery.  [Dkt. 263, pp. 11-13].  Indeed, there was no reason for the Court to opine on the issue of representative discovery in the CMSO because the Joint Report included a clarification from Defendants that their "agreement to limit depositions to 20% of the opt-in plaintiffs . . . is conditional upon Defendant [sic] being ***able to obtain individual responses to written discovery from each opt-in plaintiff.***"  [Dkt. 161] (emphasis added).  Additionally, in the Joint Report, each party sought to be entitled to serve requests to admit, documents requests, and interrogatories on each opposing party.  [Dkt. 161].  There was simply nothing in the Joint Report indicating there was any sort of dispute as to whether representative or individualized written discovery was appropriate.   For these reasons, the Special Master correctly found that at the time the Parties submitted the Joint Report, the Parties were in agreement that individualized discovery was appropriate vis-à-vis written discovery, and that limited discovery was appropriate only for depositions.

What is more, Plaintiff's own conduct establishes that Plaintiff understood the CMSO to permit individualized discovery. As noted above, Plaintiff's Requests for Production Nos. 1-12, 20-21, 25-32, 36-39, and 42 all sought documents related to all 299 of the original Opt-In Plaintiffs. Similarly, Interrogatories Nos. 1-3, 9, and 13-14 all sought individualized information as the Opt-In Plaintiffs. *Id.* Plaintiffs clearly understand the importance of individualized written discovery in this case, and their attempt to prevent that individualized discovery by Defendants is disingenuous given their own service of individualized discovery on Defendants. It is important to note that given the agreed limit on depositions, written discovery is the only discovery Defendants have to defend claims against non-deposed Opt-In Plaintiffs.

C.    **Plaintiff Has Waived The Right To Object To Pending Written Discovery**

Defendants propounded their first set of discovery requests on Mr. Martins and the Opt-In Plaintiffs on May 23, 2019. [Dkt. 222-1]. Plaintiffs' initial deadline to respond to these discovery requests was, at the latest, June 25, 2019. Although Plaintiffs served their omnibus objections to defendants written discovery on June 24, 2019, Plaintiffs never objected to any of Defendants' written discovery requests on the grounds that those requests exceeded the scope of discovery permitted by the CMSO. In fact, Plaintiffs first raised this question as to whether Defendants were permitted to serve individualized discovery on the Opt-In Plaintiffs over four months later in connection with their Response to Defendants' Motion for Court Supervised Discovery [Dkt. 212], and again in their Motion for Clarification [Dkt. 215]. To this day, Plaintiffs have never actually served written objections to any of the omnibus discovery requests raising an objection asserting that said discovery exceeded the scope of permissible discovery under the CMSO. [Dkt. 263, p. 18].

Moreover, Defendants have sent four separate deficiency letters to counsel for Plaintiffs regarding their failure to respond to written discovery served on the Opt-In Plaintiffs. Specifically:

- On August 8, 2019, counsel for Defendants sent counsel for Plaintiffs a deficiency letter, noting that Plaintiffs: (1) had requested an extension to respond to Defendants' discovery requests but had not offered any dates by which they intended to produce those responses; and (2) had agreed to produce all distributor documents (including tax returns) at least seven days prior to the distributor's deposition, but they were failing to honor that agreement.

- On August 9, 2019, counsel for Defendants sent counsel for Plaintiffs a deficiency letter, noting that written discovery had been served on all Opt-In Plaintiffs on May 23, 2019 and that as of August 9, 2019, responses had not been received from a vast majority of the Opt-In Plaintiffs.

- On August 28, 2019, counsel for Defendants sent counsel for Plaintiffs a follow-up to the August 9, 2019 correspondence, noting that since the August 9, 2019 correspondence, only three additional discovery responses had been received.

- On September 6, 2019, counsel for Defendants sent counsel for Plaintiffs another follow-up deficiency, noting (again) that written discovery was served on all the Opt-In Plaintiffs on May 23, 2019 and that Defendants had received incomplete discovery responses from several of the Opt-In Plaintiffs who failed to produce their (1) Responses to Requests for Production; (2) Responses to Interrogatories; or (3) documents pursuant to Requests for Production.

[Dkt. 199-2]. Plaintiffs never objected to any of these deficiency letters on the grounds that Defendants' discovery requests exceeded the scope contemplated by the Amended Case Management Order. Indeed, Plaintiffs never responded to these deficiency letters at all.

In addition to the formal deficiency letters, counsel for the Parties exchanged, literally, dozens of discovery-related emails, many of which expressly related to Defendants' position that Plaintiffs were not fulfilling their obligations to respond to all written discovery requests. Never

in any of those emails did Plaintiffs take the position that Defendants' service of written discovery on all of the Opt-In Plaintiffs was improper.  Instead, the first time Plaintiffs raised any objection to the scope of Defendants' discovery requests was after Defendants filed their Motion for Court Supervised Discovery [Dkt. 199].  Ultimately, Plaintiffs waited more than four months after Defendants' written discovery requests were due before alleging that the number of requests exceeded the number permitted by the CMSO.  Therefore, Plaintiffs have waived that objection.  *See*, *e.g.*, *Bailey v. City of Daytona Beach Shores*, 286 F.R.D. 625, 627 (M.D. Fla. 2012) ("Despite having been served with the request to produce, and follow up by Defendant's counsel, Plaintiff failed to respond until approximately two months after her responses to the requests for production were due. This is not a minor procedural error. A delay of this length is sufficient to justify a finding of lack of good faith on Plaintiff's part and has been held sufficient to find a waiver.").  *See also Bailey Indus., Inc. v. CLJP, Inc.*, 270 F.R.D. 662, 668 (N.D.Fla. 2010) ("[A]s a general rule, when a party fails to timely object to interrogatories, production requests, or other discovery efforts, the objections are deemed waived.");  M.D.Fla. Civil Discovery Handbook ¶¶ III.A.6 ("[F]ailure to assert an objection to a request for production within the time allowed for responding constitutes a waiver and will preclude a party from asserting the objection in response to a motion to compel."); and  IV.B.1 ("[F]ailure to assert objections to an interrogatory within the time for answers constitutes a waiver and will preclude a party from asserting the objection in a response to a motion to compel.").

Plaintiff does not dispute any of the above in Plaintiff's Obj., arguing only that the CMSO states that "the Parties may not alter the terms of this Order without leave of Court" and that "Plaintiff cannot waive limitations on discovery specifically ordered by the Court."  (Pl.

Resp., p. 19).  However, this argument is a red herring.  It is not Defendants who are seeking to alter the terms of the CMSO.  Indeed, as discussed above, the CMSO does not place any restrictions whatsoever on the responsibility of each Opt-In Plaintiff to respond to the written discovery served upon them.  Rather, it is Plaintiff who is seeking to amend the CMSO to add in such restrictive language.

For all of the foregoing reasons, this Court should adopt the Special Master's Report and Recommendation as to the scope of permissible written discovery under the CMSO.

**D.** **Contrary to Plaintiff's Assertion, Individualized Discovery Is Appropriate In The Instant Matter.**

**1.** **Individualized Discovery Is Appropriate In FLSA Collective Actions.**

This is not a Rule 23 class action; this is a FLSA collective action.  As the Eleventh Circuit's decision in *Mickles, et al. v. Country Club, Inc.*, 887 F.3d 1270 (11th Cir. 2018) made clear, each of the Opt-In Plaintiffs became a "party plaintiff" in this matter as soon as they signed a written consent to join the lawsuit.  *Id.* at 1278.  *See also McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007) (stating that "[a] 'collective action' differs from a class action," including in that Rule 23 class actions are opt-out and FLSA Section 216(b) collective actions are opt-in); *Bayles v. Am. Med. Response of Colo., Inc.*, 950 F. Supp. 1053 (D.Colo. 1996) (discussing generally why "similarly situated" requirement of Rule 216(b) collective actions is not governed by Rule 23).

Additionally, while individualized discovery may not generally be allowed in a Rule 23 class action, in FLSA collective actions where, as here, the defendants ultimately intend to move to decertify the class on the basis that the op-in plaintiffs are not "similarly situated" as required by the FLSA collective action provision, individualized discovery typically is permitted to be

served on all opt-in plaintiffs. *See*, *e.g.*, *Daniel v. Quail Intern., Inc.*, 2010 WL 55941 (M.D. Ga. Jan. 5, 2010) (court permitted individualized discovery, including depositions, of all 36 opt-in Plaintiffs); *Lloyd v. JP Morgan Chase & Co.*, No. 11 CIV 9305(LTS)(HBP), 2015 WL 1283681, at *5 (S.D.N.Y. Mar. 20, 2015) (allowing defendants to seek written discovery from the 100 opt-ins who have not signed an arbitration agreement); *Scovil v. FedEx Ground Package Sys. Inc.*, No. 1:10-cv-00515-DBH, 2011 WL 5526033, at *3 (D. Maine Nov. 14, 2011) (allowing defendant to issue 30 interrogatories, without sub-parts, and one set of requests for production of documents, limited to 20 requests per opt-in plaintiff, to each of the 40 opt-in plaintiffs); *Khadera v. ABM Industries, Inc.*, No. C08–417RSM, 2011 WL 3651031, at *4 (W.D. Wash. Aug 18, 2011) (analyzing relevant cases, and determining that "in each case, individualized discovery was permitted to allow the defendant to gather evidence to support a motion for decertification"); *Abubakar v. City of Solano*, No. 06–cv–2268 LKK EFB, 2008 WL 508911, at *1 (E.D.Cal. Feb. 22, 2008) (requiring all 150 opt-ins to respond to defendant's requests for production and documents and interrogatories); *Renfro v. Spartan Computer Servs., Inc.*, No. 06–2284–KHV–DJW, 2008 WL 474253 (D.Kan. Feb. 19, 2008) (requiring all of the over 100 opt-ins to respond to requests for production of documents and interrogatories); *Ingersoll v. Royal & Sunalliance USA, Inc.*, No. C05-1774-MAT, 2006 U.S. Dist. LEXIS 50912, at *7-8 (W.D. Wash. July 25, 2006) (concluding that "the Court is persuaded by the reasoning of courts permitting individualized discovery of opt-in plaintiffs....,"); *Coldiron v. Pizza Hut, Inc.*, No. CV03-05865TJHMCX, 2004 WL 2601180, at *2 (C.D. Cal. Oct. 25, 2004) (noting that 306 people who opted in to FLSA case required to respond to individual requests to admit, interrogatories, and document requests); *Krueger v. New York Tel. Co.*, 163 F.R.D. 446, 448 (S.D.N.Y. 1995)

(requiring all 162 opt-ins to respond to interrogatories).  As result of choosing to join the lawsuit in this manner, it is entirely reasonable to expect that the opt-in Plaintiffs have chosen to shoulder some of the responsibilities of litigation, including responding to discovery.

### 2.    Individualized Discovery Is Appropriate In The Instant Action.

The Special Master correctly found that "Defendants have demonstrated that individualized discovery of all opt-in Plaintiffs is appropriate to obtain information responsive to whether the opt-in Plaintiffs are in fact similarly situated."  [Dkt. 263, p. 14].  In reaching this conclusion, the Special Master correctly pointed out that certain variances already have been discovered that exist between the Opt-In Plaintiffs, including: (1) the hours that Opt-In Plaintiffs worked; (2) the pay provided to other employees to assist distributors with running their territory or whether they operate it alone; and (3) reporting made on tax related documents.  [Dkt. 263, p. 14; Dkt. 222, pp. 12-13].   The Special Master further correctly recognized other issues in this case that require distributor specific inquiries, including the vehicles they used servicing their distributorship, individuals involved in helping the distributors run their distributorships, and the various circumstances surround the purchase and sale of the distributor's distributorships.  [Dkt. 263, pp. 14-15].

In Plaintiff's Obj., Plaintiff does not controvert but tries to discount these differences, focusing instead on the argument that "Plaintiffs were uniformly subject to Defendants' common policie[s]."  [Dkt. 269, p. 17]. However, the "policies" cited by Plaintiff establish little more than the fact that Defendants treated the distributors as independent contractors, a fact that Defendants have never disputed.[4]   This point is critical, as courts have soundly rejected the argument that

---

[4] In Plaintiff's Obj., Plaintiff lists seven "facts" that he alleges demonstrates that the Opt-In Plaintiffs "were

the alleged misclassification of workers alone justifies certification of a collective action. *See*

*Carrera v. UPS Supply Chain Sols.*, No. 10-60263-CV, 2012 U.S. Dist. LEXIS 192917 (S.D.

Fla. Sep. 14, 2012); *Palacios v. Boehringer Ingelheim Pharm., Inc.*, No. 10-22398-CIV-UU,

2011 WL 6794438, at *6 (S.D. Fla. Apr. 19, 2011); *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914,

925 (D. Ariz. 2010); *Maestas v. Day & Zimmerman, LLC*, No. CV 09-019 JCH/LFG, 2010 WL

11601189, at *2 (D.N.M. Jan. 4, 2010); *Palacios v. Boehringer Ingelheim Pharms., Inc.*, No. 10-

22398-Civ-UU, 2011 U. S. Dist. LEXIS 92002, 2011 WL 6794438 (S.D. Fla. Apr. 18, 2011), at

*16, at *6 ("If the ultimate issue to be determined is whether the Defendant properly classified

each employee as exempt under the FLSA, the 'similarly situated' inquiry must include an

analysis of each putative plaintiff's job duties....[which] necessarily involves a fact-by-fact

inquiry.").

    Thus, even though the distributors may be subject to a common "policy" of being treated

as independent contractors, at the decertification stage, the critical questions remains as to

whether their particular circumstances warrant collective or individualized treatment.  As to this

question, the individualized discovery sought by Defendants will be essential.  At the close of

---

uniformly subjected to Defendants' common policy."  (Pl. Obj., p. 17).  First and foremost, Defendants note that Plaintiff bases this statement entirely on the declarations of seven distributors in conjunction with their Motion for Conditional Certification, and that these "facts" were taken as true for the purposes of conditional certification. [Dkt. 61].  They were not originally scrutinized and have not yet been scrutinized by the Court during the decertification phase.  Second, several of these "facts" – i.e., Nos. 3, 4, 6, and 7 – establish little more than that Defendants treated the distributors as independent contractors.  The remaining "facts" are directly contradicted by deposition testimony and interrogatory responses obtained from Opt-In Plaintiffs to date.  In fact, the picture emerging is that the Opt-In Plaintiffs' relationships with respect to Defendants are wildly varied.  For example, one Opt-In Plaintiff testified that he works 25 hours per week, while another testified that he works 76 hours per week. [Dkt. 222, pp. 12-13]. One Opt-In Plaintiff represented that he pays over $60,000 per year to other employees who assist him in running his territory, while another has testified that he operates his entire territory himself.  *Id.*  One Opt-In Plaintiff testified at his deposition that he makes $35,000 per year, whereas that same Plaintiff claimed in his interrogatory responses that he makes $75,000 per year.  *Id.* Another Opt-In Plaintiff testified at his deposition that he works 25 hours per week, whereas that same Plaintiff claimed in his interrogatory responses that he works 65 hours per week.  *Id.*

discovery, Defendants intend to file a motion to decertify this matter as a collective action.  In order to compile the facts necessary for such a motion, it is axiomatic that Defendants are entitled to at least basic information from each of the Opt-In Plaintiffs as to the number of hours they are claiming to have worked, the vehicles they used servicing their distributorship, individuals who may have helped them service their distributorships, purchase and sale of distributorship rights, tax records, and other information addressed by Defendants' written discovery.

Moreover, the discovery Defendants are seeking goes directly to the question of the Opt-In Plaintiff's employment classification, which is the very heart of this lawsuit.  The Eleventh Circuit applies the fact-intensive "economic reality" test to determine whether an individual is properly classified as an independent contractor or an employee. *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172 (11th Cir. 2012).  Plaintiffs' tax returns in FLSA misclassification claims, for example, are very instructive on the question of what Plaintiffs held themselves out to be, as well as their opportunities for profit and loss.  *See*, *e.g.*, *Holick v. Cellular Sales of N.Y., LLC*, No. 1:12-CV-584 (NAM/DJS) (N.D.N.Y. Apr. 26, 2019) (in decertifying FLSA class based on the individualized discovery conducted, noting "courts frequently consider plaintiffs' claimed designations on their tax filings as 'plainly relevant to the independent contractor versus employee inquiries") (internal citations omitted).  Opt-In Plaintiffs' earnings over the years, including partial or full sales of their territories, go directly to the question of their potential and realized opportunities for profit or loss.  This list is by no means exhaustive.

Ultimately, individualized written discovery is precisely the approach contemplated by this Court's CMSO – Defendants are entitled to at least basic key elements of Plaintiffs' claims

and Defendants' defenses as to each individual party Plaintiff to demonstrate whether evidence is sufficiently individualized to support a decertification motion.  This is why district courts allow individualized discovery in FLSA actions during the second phase. *See*, *e.g.*, *Ingersoll*, 2006 WL 2091097 at *2 (holding, "critically, discovery related to the opt-in plaintiffs is pertinent to the determination of whether or not these individuals are similarly situated within the meaning of the FLSA ... Defendants reasonably and appropriately request the opportunity to obtain discovery relevant to their anticipated motion to decertify," and also noting, as in this case, that plaintiffs objected to discovery served on opt-in plaintiffs, but "plaintiffs sought discovery both as to named and opt-in plaintiffs in their own first set of discovery requests"); *Coldiron*, 2004 WL 2601180 at *2 (ordering plaintiff to provide further answers to requests for production, interrogatories and requests for admission served on 306 opt-in plaintiffs, noting "[h]ere, the question of whether the plaintiffs are similarly situated within the meaning of 29 U.S.C. § 216(b) is still an issue because [the defendant] plainly intends to move to decertify the class. Based on that reason alone, discovery, including individualized discovery, is both necessary and appropriate. The court therefore holds that [the defendant] may conduct individualized discovery from the opt-in plaintiffs."); *Abubakar*, 2008 WL 508911 at *2 (denying FLSA collective action plaintiffs' motion for protective order to limit discovery or depositions, and allowing defendants to re-serve interrogatories and requests for production on individual opt-in plaintiffs); *Noll v. Flowers Foods Inc.*, No. 1:15-CV-00493-LEW, 2020 WL 4457769 (D. Me. Aug. 3, 2020) (recognizing that individualized discovery needed when analyzing the Motor Carrier Act exemption).

Stated simply, the representative discovery Plaintiff now proposes would deny Defendants basic due process.  Again, at the close of discovery, Defendants intend to file a motion to decertify this matter as a collective action, and the deadline for such a motion is specifically contemplated by the CMSO.  In order to compile the facts necessary for such a motion, it is axiomatic that Defendants are entitled to at least basic information from each of the Opt-In Plaintiffs as to the number of hours they are claiming to have worked, the vehicles they used servicing their distributorship, individuals who may have helped them service their distributorships, purchase and sale of distributorship rights, tax records, and other information addressed by Defendants' written discovery.

Finally, the cases cited by Plaintiff in Plaintiff's Obj. do not support his argument that Defendants should not be entitled to obtain written discovery responses on key elements and documents from each of the Opt-In Plaintiffs in this case.  For example, Plaintiff cites to *Belloso v. Asplundh Tree Expert, Co.*, 2018 WL 4760671 (M.D. Fla. Aug. 24, 2018) for the proposition that "individualized discovery or testimony of each opt-in plaintiff is not required." (Pl. Resp, p. 12).  However, as the *Belloso* court specifically noted, its decision was limited to the "notice phase" of the case, not the decertification phase at issue here.  *Id.* at *2.  Moreover, the discussion in *Belloso* was in the context of whether a travel warning should be included in the class notice in the event an opt-in plaintiff was deposed.  *Id.* at *4.  Defendants have never contended that they intend to depose all of the Opt-In Plaintiffs in this case (and in any event, Defendants have actually gone out of their way to depose Opt-In Plaintiffs at locations that would be most convenient for the Opt-In Plaintiffs).

-17-

Similarly, Plaintiffs' Resp. contains a large block quote from the Sixth Circuit's decision in *Monroe v. TFS USA, LLC*, 860 F.3d 389 (6th Cir. 2017) for the proposition that "representative evidence is sufficient for FLSA collective actions."   (Pl. Resp., p. 12-13). However, the *Monroe* decision was in the context of whether certain types of representative evidence was permissible in a collective action (in this case, an expert report).   There was no discussion whatsoever in *Monroe* as to whether the defendant was entitled to serve written discovery on individual class members in any context, let alone in the context of discovery in anticipation of a decertification motion.

Plaintiffs also cite to the *Romero v. Florida Power & Light Co.* – 2012 WL 1970125 (M.D. Fla. June 1, 2012) – claiming that that "the Middle District of Florida rejected defendant's argument that individualized inquiries precluded the use of representative discovery."  [Pl. Resp., p. 15].   However, *Romero* was not a misclassification case at all, let alone a case where the plaintiffs alleged they were misclassified as independent contractors.   Rather, *Romero* involved allegations that the defendant had a policy requiring the plaintiffs to work through their meal periods and that the plaintiffs were not compensated for that time.  *Romero*, 2012 WL 1970125 at *1.

Additionally, Plaintiff relies heavily on the case of *Gentrup v. Renovo Servs.* – 2010 WL 6766418 (S.D. Ohio August 17, 2010) – for the broad statement that in an FLSA case involving allegations of independent contractor misclassification, "representative discovery was not necessary for a decertification motion."  [Dkt. 263, pp. 15-16].  However, Plaintiff ignores the *Gentrup* Court's acknowledgement that "if upon completion of representative discovery it becomes clear that the Plaintiffs' circumstances are so distinct as to make representative

-18-

discovery impracticable, Defendants shall be granted leave to extend the discovery period in order to expand discovery to include a larger group of Plaintiffs, or potentially the entire class." *Gentrup*, 2010 WL 6766418 at *8. Here, the facts already in the record establishes that clear distinctions exist between the Opt-In Plaintiffs, a fact already acknowledged by the Special Master and not contested by Plaintiff in Plaintiff's Obj.

>    **E.    Plaintiff's Objection to the Special Master's Recommendation that Defendants' Motion to Compel Be Granted in Part Lacks Merit.**

Plaintiff's argument that this Court should reject the Special Master's Report and Recommendation as to Defendants' Motion to Compel should be overruled is based almost entirely on the argument that the Special Master misinterpreted the CMSO. [Dkt. 269, p. 18]. For all the reasons set forth above, Plaintiff's argument in this regard lacks merit. However, Defendants note further that Plaintiff did not contest several of the Special Master's findings regarding the failure of many of the Opt-In Plaintiffs to fulfill their discovery obligations. For example, Plaintiff does not dispute that many of the Opt-In Plaintiffs have failed to provide any responses at all to Defendants' Omnibus Interrogatories and or the Omnibus Production Requests. [Dkt. 263, p. 18]. Further, Plaintiff does not contest the Special Master's findings that while Plaintiff's Motion for Clarification was pending, Plaintiff never objected in writing that Defendants' written discovery was outside the scope allowed by the Court, nor did he ever file any sort of protective order. [Dkt. 263, p. 18].

For these reasons, and for all the reasons discussed above, this Court should adopt the Special Master's Report and Recommendation as it relates to Defendants' Motion to Compel.

**F.**     **The Special Master's Award of Attorneys' Fees Was Appropriate And Should Be Upheld.**

As correctly held by the Special Master, the applicable rules require that if a motion seeking to compel outstanding discovery is granted, the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion to pay reasonable expenses including attorneys' fees. Fed. R. Civ. P. 37(a)(5)(A). Nevertheless, Plaintiff argues that attorneys' fees should not be awarded in the instant matter, and moreover that the Special Master failed to analyze whether: (1) Plaintiff's nondisclosure, response, or objection was substantially justified; or (2) if there were any other circumstances making an award of expenses unjust." (Fed. R. Civ. P. 37(a)(5)(A); Pl. Obj. p. 19). The party facing sanctions bears the burden of establishing substantial justification or circumstances making an award of expenses unjust. *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir.1994).

Here, Plaintiff fails to meet his burden. Again, it is worth noting that Plaintiff does not dispute that many of the Opt-In Plaintiffs failed to respond to Defendants' discovery responses. Plaintiff further does not dispute that he never formally objected to Defendants' written discovery requests as exceeding the scope of the CMSO or that he ever sought a protective order from the Court relieving him of his obligations to respond to Defendants' written discovery. Instead, Plaintiff first argues that he had a good faith belief that individualized discovery was not permitted under the CMSO. (Pl. Obj., p. 20). Again, this contention is deeply cynical given that Plaintiff had no qualms about serving individualized discovery on Defendants. Additionally, Defendants made several good faith efforts to obtain the missing discovery responses from the Opt-In Plaintiffs. This included sending deficiency letters to Plaintiff's counsel on four different occasions, and all of those letters went unanswered. [Dkt. 220, pp. 3-4]. Finally, Plaintiff's

-20-

counsel has never provided any justification as to why several deponents had simply no-showed their depositions, had not received litigation hold notices, and had never even bothered to read through their own discovery responses.  [Dkt. 222, p. 10].

In short, the Opt-In Plaintiffs' conduct up to this point in time has been inexcusable, and the Special Master's recommendation that Defendants be awarded their reasonable attorneys' fees incurred in connection with their Motion to Compel should be adopted.

G.  **Plaintiff Has Waived Any Objection To The Special Master's Report And Recommendation Inasmuch As That Report and Recommendation Sets Forth A Plan Going Forward For the Special Master To Supervise The Outstanding Discovery.**

As a final matter, Plaintiff does not raise any specific objections to the Special Master's recommendation that Defendants' Motion for Court-Supervised Discovery be granted in part, nor does Plaintiff raise any objection to the plan by the Special Master to "issue a separate discovery order outlining the ongoing reporting that will be required regarding the status of discovery, the process for calling a discovery matter up for hearing, and any other matters necessary to aid the parties in completing discovery timely."  [Dkt. 263, p. 21].  While certainly, many of the issues raised in connection with Defendants' Motion for Court-Supervised Discovery overlap with the issues raised in Plaintiff's Motion for Clarification, there is no overlap as it relates to Defendants' request that the Court (now the Special Master) more closely supervise the remaining discovery between the Parties.  Inasmuch as the Special Master's Report and Recommendation sets forth a plan going forward to more closely supervise the outstanding discovery, Plaintiff has waived any objection to that Plan.

-21-

### III.   CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court adopt the Special Master's Report and Recommendation in its entirety.

Respectfully submitted, this 31st day of August, 2020.

/s/  C. Garner Sanford, Jr.

C. Garner Sanford, Jr. (GA Bar No. 005020)
(*Pro Hac Vice*)
OGLETREE DEAKINS NASH SMOAK
   & STEWART, P.C.
191 Peachtree Street, NE, Suite 4800
Atlanta, Georgia 30303
Telephone: (404) 881-1300
Facsimile: (404) 870-1732
garner.sanford@ogletreedeakins.com

Dee Anna D. Hays (FL Bar No. 0064790)
OGLETREE DEAKINS NASH SMOAK
   & STEWART, P.C.
100 North Tampa Street, Suite 3600
Tampa, Florida 33602
Telephone:  (813) 289-1247
Facsimile:  (813) 289-6530
deeanna.hays@ogletreedeakins.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 31st day of August, 2020, I electronically filed the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION [D.E. 263]** with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to Plaintiffs' counsel, Andrew R. Frisch at afrisch@forthepeople.com, Chanelle J. Ventura at Cventura@forthepeople.com, and Adeash "AJ" Lakray at alakraj@forthepeople.com, including all secondary electronic mail addresses on file with the Clerk.

**I FURTHER CERTIFY** that to the best of my knowledge there are not any non-CM/ECF participants that require notification of this response via U.S. Mail.

*/s/  C. Garner Sanford, Jr.*
C. Garner Sanford, Jr.